IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WYMARA LTD. AND WYMARA DEVELOPMENTS LTD. <br><br> Plaintiffs, <br><br> vs. <br><br> GANSEVOORT HOTEL GROUP, LLC <br><br> Defendant. | Civil Action No. <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS WYMARA LTD. AND WYMARA DEVELOPMENTS LTD'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs Wymara Ltd. and Wymara Developments Ltd. (collectively, "Wymara" or "Plaintiffs") file this Complaint for Damages and Injunctive Relief against Defendant Gansevoort Hotel Group, LLC ("Gansevoort" or "Defendant"), upon personal knowledge as to their own actions and upon information and belief as to all other matters, as follows:

## I.
## PRELIMINARY STATEMENT

1. This case arises from Defendant's use of, *inter alia*, www.wymara.com, whereby Defendant is improperly passing itself off as having an ongoing affiliation with Plaintiff. Plaintiff seeks to stop Defendant from misappropriating Wymara's well-known and distinctive trademark.

2. Since 2007, Wymara invested substantial time, effort, and resources in connection with the creation, marketing and promotion of goods and services under the Wymara trademark. Through its exclusive use of the trademark, substantial investment, and hard work, Plaintiffs ensured that the Wymara name became associated with a quality of services which has generated substantial international goodwill towards its name and mark.

3. In 2004, Defendant opened the first of what it represented would be a chain of Gansevoort-branded properties. Based upon specific representations about the future quality of the brand, the financial resources available to develop the distribution of the brand, and its commitment to marketing each asset affiliated with it, Wymara agreed to allow Gansevoort to brand and manage the luxury boutique hotel Wymara was developing in Turks & Caicos Islands. Unfortunately, the promises made to induce Wymara to join the Gansevoort brand turned out to be false—instead, Defendant allowed its level of service to deteriorate, and in so doing destroyed the value of any affiliation with the Gansevoort brand.

4. During the affiliation, Gansevoort requested that Wymara transfer ownership and control of Wymara's internet domain, which included Wymara's long-used trademark, to Gansevoort in order to allow it to be integrated into Ganseoort's website. Wymara transferred control of the domain to Gansevoort on these terms.

5. As the relationship between Gansevoort and Wymara deteriorated due to Gansevoort's failure to maintain the expected quality of service at its hotel in New York, it became clear that Wymara's brand was being damaged by its affiliation with Gansevoort. Consequently, the relationship between the parties was terminated. Unfortunately, Gansevoort has refused to transfer the ownership of Wymara's domain back to it. Instead, Gansevoort has unjustly enriched itself by improperly diverting an unknown number of customers and business opportunities from Wymara and passing itself off as still being affiliated with Wymara.

6. To avoid further confusion and deception of consumers and to prevent Defendant's obvious and willful trading on Wymara's goodwill, Wymara files this action asserting claims for trademark infringement, unfair competition, and false designation of origin under Section 43(a) of the Lanham Act; for cybersquatting under Section 43(d) of the Lanham

Act; and for related claims of infringement and unfair competition under the common law of New York.

## II.
## PARTIES

7. Wymara Ltd. is a Turks and Caicos Islands company with its principal place of business located in Providenciales, Turks and Caicos Islands.

8. Wymara Developments Ltd. is a Turks and Caicos Islands company with its principal place of business located in Providenciales, Turks and Caicos Islands.

9. Gansevoort Hotel Group, LLC is a Delaware limited liability company with its principal place of business located at 100 Ring Road West, Room 101, Garden City, New York 11530. Gansevoort may be served with process through its registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

## III.
## JURISDICTION AND VENUE

10. This action arises under the Section 43(a) of the Lanham Act (15 U.S.C § 1125), the Anti-Cybersquatting Consumer Protection Act ("ACPA") (15 U.S.C § 1125(d)), and under the common law of New York. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C §§ 1331 and 1338.

11. This Court has supplemental jurisdiction over Wymara's remaining claims under 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in New York.

13. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims asserted occurred within this district.

## IV.
## FACTUAL BACKGROUND

A. **Wymara Manages and Operates the Resort.**

14. In the 2000s, Gansevoort desired to establish itself as a trendy, sophisticated and luxury hotel brand. Gansevoort opened trend-setting, luxury hotels in Manhattan and South Beach, Miami, and announced plans to open additional Gansevoort-branded properties in New York City, Toronto, and Chicago.

15. At that same time, Wymara was developing a luxury boutique hotel on the Turks and Caicos Islands. Because it boasted a loyal clientele, possessed vibrant and modern properties, and represented that its future expansion plans were supported by substantial commitments, Gansevoort convinced Wymara to join the nascent Gansevoort brand. As a result, Wymara agreed to allow Gansevoort to brand and manage its property as the "Gansevoort Turks + Caicos, a Wymara Resort" (the "Resort").

16. The Resort opened in March 2009.

17. The Resort is a luxury boutique hotel located on the Turks and Caicos Islands with 91 guestrooms, including 32 suites and 4 penthouses, plus an additional 7 four- and five-bedroom oceanfront villas, each with two private pools. The Resort is widely celebrated and has garnered accolades, including recently being listed among the best resorts in the Caribbean by Condé Nast Traveler's Reader's Choice.

B. **Paradise: Wymara Agrees to Make the Resort A Gansevoort-Branded Property.**

18. Since its opening, the Resort has been a Gansevoort-branded property. Wymara agreed to make the Resort a Gansevoort-branded property based on the specific and detailed promises made by the owners of the brand regarding Gansevoort's then-present commitments to invest in and expand the brand.

19. In 2004, Gansevoort opened its flagship property in the meatpacking district of Manhattan (the "NYC Gansevoort"). That property is widely credited with transforming the meatpacking district from the home of hundreds of slaughterhouses and meatpacking plants into today's trendy locale of clubs, bistros, and designer boutiques.

20. In March 2008, Gansevoort opened its second property – the "Gansevoort South," which quickly established itself as among South Beach's premier properties.

21. At that time, Gansevoort was constructing the "Gansevoort Park Avenue" – which opened in 2010 and became known for its excellent levels of service. At the same time, Gansevoort represented that it would open Gansevoort-branded properties in Toronto and Chicago.

22. In light of the success of the NYC Gansevoort and the Gansevoort South and Gansevoort's specific representations about the future of the brand, Wymara agreed to allow Gansevoort to brand and manage the Resort pursuant to a management agreement dated November 1, 2008 and amended on September 13, 2011.

C. **Trouble In Paradise: Gansevoort Reneges on Its Promises.**

23. Aside from the Resort, only one Gansevoort-branded property still exists in the world today—the NYC Gansevoort. It is only now known that Gansevoort did not have commitments for the additional properties or the financial resources to follow through on those very commitments that induced Wymara to become part of the brand.

24. This was not the only issue Gansevoort experienced with its overly ambitious attempt to grow its brand. In December 2017, Gansevoort sold the Gansevoort Park Avenue, which is no longer a Gansevoort-branded property. The loss of that sophisticated and luxurious property was significant to the deterioration of the brand.

25. Gansevoort's failure to adhere to its planned growth strategy has caused considerable concern and confusion amongst professionals in the travel industry about the future direction and viability of the Gansevoort brand.

26. The struggling NYC Gansevoort has adversely affected the Resort as it was struggling to meet that first-class luxury resort standard. The following customer review of the NYC Gansevoort appeared on TripAdvisor and is paradigmatic of the disappointment and damage to Wymara's brand that Gansevoort's poor management has caused:

- May 2018: "**big disappointment:** ... Will we go back? Hell no!!! We were also looking at booking with one of the other Gansevoort hotels in Turks or DR....will we????? Ummmmm NO!!!"

27. As customer comments demonstrate, the deficiencies at the NYC Gansevoort are adversely affecting the perception of what remains of the Gansevoort brand – including the Resort.

**D.      Paradise Lost:  Gansevoort's Failed Promises Harm Wymara and The Resort.**

28. Meanwhile, significant disagreements arose between Wymara and Gansevoort concerning Gansevoort's management and operation of the Resort.

29. For example, in 2015, Wymara began construction on the first five villas, 2.5 miles away from the Resort. However, Gansevoort refused to allow those villas to be affiliated with the Gansevoort brand.

30. To resolve disagreements, effective as of September 28, 2016, Wymara and Gansevoort agreed to terminate the management agreement and enter into a license agreement for the use and licensing of Gansevoort's trademarks in connection with the operation of the Resort (the "Resort Agreement").

### E. The Wymara Mark and Domain.

31. The Wymara trademark (the "Mark") was first in use well before Gansevoort was in the picture. The original registration application for the Mark was filed on September 27, 2007, and registration was granted on September 20, 2011. As Wymara failed to timely file declarations under Section 8, the Mark was canceled on April 1, 2022.

32. On June 27, 2022, shortly after the cancellation, Wymara filed four separate class trademark applications, 3 of which were approved and published on the Public Register on April 14, 2023.

33. Wymara also registered its domain, www.wymara.com, on November 14, 2007. During its relationship with Gansevoort, Wymara transferred the website ownership and control to Gansevoort. When a given user accessed Wymara's domain, they were redirected to the Gansevoort website (https://www.gansevoorthotelgroup.com/hotels/gansevoort-turks-and-caicos) containing Wymara's hotel information under the Gansevoort brand name.

34. The deterioration of the Gansevoort brand adversely affected the performance of the Resort because the Resort's affiliation with the Gansevoort brand hurt sales at the Resort. After a series of disputes and disagreements continued between the parties relating to the detrimental impact on Wymara, Wymara terminated the contract under which it agreed to be affiliated with the Gansevoort brand and changed the full title of the Resort to omit Gansevoort's branding. Indeed, Gansevoort and its brand have continued to decline financially, cosmetically and as a brand. In fact, the owners of the asset has been forced to the point of having to give up part of the ownership – demonstrating that it was at no time able to actually fulfill the promises made to Wymara.

35. After the termination of the relationship, Gansevoort did not return Wymara's domain. Instead, Gansevoort kept the domain and continued to redirect visitors to its own

website. Eventually, entering Wymara's domain name produced only a "page not found" error—presumably because Gansevoort has purged the redirected page on which it used to host information regarding the Resort.

36. The Resort Agreement does not grant Gansevoort a license to own or control a website with the Wymara Mark. Consequently, during May 2022, Wymara sent Gansevoort several cease-and-desist letters, asserting that Gansevoort was infringing on Wymara's trademark and demanding the transfer of ownership and control of Wymara's domain to Wymara.

37. Due to Gansevoort's refusal to transfer back ownership of the website, Wymara was forced to create a new website, https://wymararesortandvillas.com/, on October 30, 2018.[1]

## V.
## CAUSES OF ACTION

### COUNT I – TRADEMARK INFRINGEMENT
### UNFAIR COMPETITION, FALSE ASSOCIATION AND/OR DESIGNATION OF ORIGIN UNDER SECTION 43(A)(1)(A) OF THE LANHAM ACT

38. Wymara hereby adopts and re-alleges the allegations set forth in the preceding paragraphs.

39. Wymara obtained nationwide trademark rights under the common law through the continuous and exclusive use of its Mark.

40. Defendant's acts described herein have been perpetuated with the intent and purpose of (i) misappropriating the goodwill of Wymara; (ii) diluting the distinctiveness of the trademark; (iii) intentionally maintaining the false appearance that the site www.wymara.com is connected to Defendant, thereby generating confusion as to the origin of the Internet site; (iv) diverting Internet users searching for Wymara from finding Wymara goods and services; and

---

[1] In late 2018, Gansevoort disabled redirection from Wymara.com to Gansevoort's website.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**  **Page 8**

(v) using the instrumentality of an Internet site to seize control of Wymara's mark for the purpose of injuring, damaging and/or otherwise diluting the mark.

41. In diverting customers who visited www.wymara.com, Defendant falsely held itself out to be agents of and/or authorized by Wymara, when this was and is not the case.

42. In diverting customers who searched for www.wymara.com, Defendant intended to cause confusion, mistake and/or deception as to whether Defendant and its hotel were affiliated with Wymara and/or its resort.

43. Defendant's use of Wymara's trademark in connection with the domain www.wymara.com, maintenance of the false appearance that Wymara was closed, and subsequent presentation to consumers of Defendant's goods and services has caused and will continue to cause irreparable harm to Wymara for which there is no adequate remedy at law. Such harm includes, without limitation, the unlawful dilution of Wymara's trademarks, loss of sales, loss of potential additional sales and advertising revenue, loss of profits, loss of goodwill and reputation among customers and potential customers, and the cost of corrective advertising campaigns.

44. Defendant has been unjustly enriched by revenues generated by its commercial use of Wymara's trademarks and by the other unfair advertising methods described herein.

45. Defendant's actions described herein constitute false designation of origin, false description, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

46. Wymara has sustained injury and damage caused by Defendant's conduct in addition to irreparable harm. Acts complained of herein have caused damage and irreparable injury to Wymara and will result in further damage and irreparable injury if Defendant is not restrained by the Court for further violation of Wymara's rights.

47. Wymara has no adequate remedy at law and demand relief as set forth herein.

## COUNT II – CYBERSQUATTING
## UNDER SECTION 43(d) OF THE LANHAM ACT, 15 U.S.C§ 1125(d)

48. Wymara hereby adopts and re-alleges the allegations set forth in the preceding paragraphs.

49. Wymara's "Wymara" mark is inherently distinctive. At all times relevant hereto, Wymara has been and still is the owner of the rights, title and interest in and to the Wymara Mark.

50. Upon information and belief, Wymara's domain was registered by Wymara on or about November 14, 2007. Wymara's website domain name was distinctive at the time of its registration.

51. At the time Defendant began using Wymara's domain, Defendant had no intellectual property rights in or to the Wymara Mark.

52. Upon information and belief, with full knowledge of Wymara's exclusive rights in its trademark, Defendant has attempted to confuse consumers and divert them to Defendant's website for profit.

53. Defendant's attempt to divert Wymara's consumers to a website offering competing services for commercial gain and with the intent to create likely and actual confusion as to the source, sponsorship, affiliation or endorsement of Defendant's website, has irreparably harmed Wymara's goodwill in its trademark.

54. Defendant has no *bona fide* non-commercial or fair use of the Wymara mark under which it may justify its damaging behavior.

55. Defendant's actions constitute cybersquatting in violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). Defendant's conduct is perprated with knowledge and

constitutes a willful violation of Wymara's rights in the Wymara Mark. At a minimum, Defendant's conduct is in reckless disregard of Wymara's rights or demonstrates willful blindness to Wymara's rights.

56. Defendant's conduct has caused and will continue to cause injury to Wymara, to its goodwill and reputation, and to its future prospects and plans in the hospitality industry. Therefore, Defendant should be permanently enjoined from ever again cybersquatting on Wymara's mark and the domain name that consists wholly of Wymara's mark should be transferred to Wymara pursuant to 15 U.S.C. § 1117(d)(1)(C).

## COUNT III –INFRINGEMENT AND UNFAIR COMPETITION IN VIOLATION OF NEW YORK COMMON LAW

57. Wymara hereby adopts and re-alleges the allegations set forth in the preceding paragraphs.

58. Wymara owns all rights, title and interest in and to the Wymara Mark, including all common law rights in the Mark.

59. Defendant's use of Wymara's domain, which incorporated Wymara's Mark, was unauthorized and was likely to cause or has in fact already caused consumer confusion.

60. Defendant used Wymara's domain, which incorporated Wymara's Mark, with the intention to profit from the goodwill associated with Wymara.

61. Defendant's use of Wymara's domain to divert potential customers to its own website deliberately confused the public and is reflective of Defendant's intentional attempts to mislead potential customers into believing that Defendant was affiliated with Wymara.

62. The acts of Defendant complained of herein constitute trademark infringement and unfair competition under New York law. Defendant 's acts of trademark infringement and unfair competition were done intentionally and/or with bad faith.

63. As a result of these actions, Wymara has been damaged in an amount to be determined at trial.

## VI.
## JURY DEMAND

Wymara hereby demands trial by jury of all claims pursuant to Fed. R. Civ. P. 38.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Wymara demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

a. Entry of preliminary and permanent injunctions enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith from infringing or diluting the Wymara Marks; from using the Wymara Mark; from using any trademark which may be calculated to falsely advertise the services or goods of Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with Wymara; from falsely representing themselves as being connected with Wymara, through sponsorship or association, or engaging in any act which is likely to falsely cause consumers to believe any goods or services of Defendant are in any way endorsed by, approved by, and/or associated with Wymara; and from otherwise unfairly competing with Wymara;

b. Entry of an order requiring the www.wymara.com domain to be immediately transferred by Defendant, its Registrars and/or the Registries to Wymara's control;

c. Entry of an Order requiring Defendant to account to and pay Wymara for all lost profits, disgorge all profits wrongly obtained by Defendant, and pay actual damages resulting from Defendant's trademark infringing activities;

d. Entry of an Order requiring Defendant to account to and pay Wymara for all profits and damages resulting from Defendant's cybersquatting activities or, at Wymara's

election with respect to Count II, that Wymara be awarded statutory damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) per pirated domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act;

e. Entry of an Order awarding Wymara its costs and reasonable attorneys' fees and investigative fees associated with bringing this action;

f. Entry of an Order awarding Wymara pre-judgment interest on the judgment amount; and

g. Entry of an Order awarding Wymara such other and further relief as the Court may deem just and proper.

DATED: June 21, 2023.   Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

 */s/ William A. Brewer III*
William A. Brewer III
New York Bar Admission No.: 1300938
Gizem Petrosino  (*Admission Pending*)
New York Bar Admission No.: 5122221
750 Lexington Avenue, 14th Floor
New York, NY 10022
wab@brewerattorneys.com
gap@brewerattorneys.com
Telephone: (212) 489-1400
Facsimile: (212) 751-2849